REVEREZ (CAMELLOS v.). See Case No. 2,339.

---

## Case No. 11,718.
### REYLEY et al. v. The CARRIE BROOKS.
[26 Pittsb. Leg. J. 29.]

District Court, W. D. Pennsylvania. Sept. 9, 1878.

MARITIME LIENS — PRIORITIES — MORTGAGE FOR PURCHASE MONEY—MATERIALS AND SUPPLIES— FOREIGN AND DOMESTIC MATERIAL-MEN.

1. A purchase money mortgage to secure the payment of a balance due on the purchase of a vessel, and which has been duly recorded in the collector of customs' office (at the home port of the vessel, or at the place the owners reside), under act of congress passed the 29th day of July, A. D. 1850,—Rev. St. § 4192 [9 Stat. 440]. Held: a mortgage against a vessel is not in its nature a maritime contract. That the recording of a mortgage against a vessel under said recording act, is notice to all domestic material-men who have liens of the second class under the law of the lex loci, for materials and supplies furnished at the instance and request of the master or owners, said mortgage takes the precedence, and is paid in full from the fund arising from the sale of the vessel at United States marshal's sale; providing said materials and supplies were furnished subsequent to the recording of the mortgage.

2. Foreign claimants of the second class, for materials and supplies furnished, take precedence and are paid in full before domestic claimants of the same class.

3. A purchase money mortgage against a vessel does not take precedence over foreign claims or liens for materials and supplies furnished, for the reason that the lien for materials and supplies furnished at a foreign port is in its nature maritime.

In admiralty.

John Barton, for mortgagee.
John Barton, Jr., for foreign claimants.
Montooth & Bros., for domestic claimants.

Opinion by KNOX, Commissioner, confirmed by KETCHUM, District Judge:

The steamboat "Carrie Brooks" of Pittsburgh, a vessel of the United States, lately engaged in the passenger and freight trade upon the Ohio and Monongahela rivers, was, on the third day of April, A. D. 1878, seized by the United States marshal of the Western district of Pennsylvania, upon process in rem issued by the district court at the suit of Wm. Reyley et al., mariners, at No. 18 May term, 1878, in admiralty. By permission of the court, and prior to the sale of the vessel, various libels of intervention were filed, some for materials and supplies furnished by citizens of Pennsylvania, within the borders of that state, some for like necessaries procured for the vessel's use while navigating the waters of the United States bordering on the state of Ohio, and from citizens thereof, and another based upon a mortgage executed by John A. Trimble and James H. Trimble, late owners of the "Carrie Brooks," to secure the payment to R. D. Schultz of certain notes and a balance owing him on account of the purchase from him of said vessel, which notes and balance are due and unpaid.

By the return of the marshal endorsed upon a writ of vend. ex. subsequently issued, it appears he sold the boat on the 8th day of May, A. D. 1878, for fifteen hundred and twenty-five dollars, ($1,525.00) and after deducting costs, expenses, and the numerous claims for wages allowed in the two partial reports heretofore filed by the commissioner, and confirmed by the court, there remains in the registry, the sum of five hundred and thirty-seven dollars and fourteen cents ($537.-14), claiming which, are the three classes of creditors hereinbefore mentioned, to wit, the foreign and domestic material-men, and the mortgagee. For a perfect comprehension of the reasons upon which the commissioner bases his finding, he is compelled to ask the court's indulgence for, and attention to rather more of detail, in summing up his understanding of the law governing the case, than the amount in controversy would seem to demand; not having been able to discover, however, that the exact points involved in the solution of the questions raised have been adjudicated in this district, it may be proper to give somewhat at length, the process of reasoning leading to, and terminating in the conclusion hereinafter expressed.

Those who repaired or fitted out a ship, or

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

furnished her with materials and supplies necessary for the prosecution of a voyage, and for its perfection of the ends she was designed to accomplish, have, from time immemorial, been denominated material-men, and by the civil law were, and in those countries whose jurisprudence is founded on that law, still are entitled to a privilege or specific lien upon the vessel itself existing and adhering thereto through any and all changes of possession, and only divested by payment, judicial sale or an unreasonable delay in attempting to enforce the same. The fundamental reason of this law of liens, this jus in re, is a benefit conferred upon the res, or thing, the subject matter of the lien, and, while it would seem, arguing from the reason of the thing, that this right should exist without qualification among those conferring the same benefits, yet it is held in this country and England, that the lien attaches only in favor of those furnishing materials and supplies to a foreign vessel, or to a domestic vessel in a foreign port, or to be more definite as to our own law, the rule in the United States is, material-men furnishing supplies to a domestic vessel, have no lien thereon for their value under the marine law. Vide "The Lottawanna," 21 Wall. [88 U. S.] 558, and cases cited. Therefore, as between the claims for providing the boat with supplies in Ohio and Pennsylvania, we are safe, upon definite authority, in excluding the latter, or at least postponing them until the former are satisfied. Having thus disposed of the questions between the foreign and domestic claimants, we may next consider the relative rights of the mortgagee and the foreign material-men. In respect to these, it is clear upon the general principles of the marine law, that the claim of the material-men takes precedence, and this without regard to the time of furnishing the supplies, whether prior or subsequent to the recording of the mortgage; if antecedent to the recording, the mortgagee took his security burdened with the lien, if after he was benefited by the supplies, inasmuch as the vessel was thereby enabled to prosecute its voyage for the benefit of all interested, in neither case is the reason for the lien affected, and the advantage to the vessel is the same. Besides, the mortgage of a ship, other than a regular hypothecated bottomry, is not a maritime contract, hence its status in an admiralty court could be on neither a higher nor an equal plane with that of an universally recognized maritime lien.

Greater difficulty was experienced in coming to a conclusion, upon the questions raised touching the respective rights of the mortgagee, and of those merchants who had furnished the vessel supplies, in this, her home port, neither of whom, as we have formerly shown, having liens under the marine law, we are compelled to look elsewhere for the law in the case. By a statute of Pennsylvania (Act April 20, 1858) it is provided that, "all ships, steamboats, or vessels navigating the rivers, Allegheny, Monongahela or Ohio, in this state, shall be liable and subject to a lien in the following cases," then follows, inter alia: "For all debts contracted, &c.; for work and labor done, or materials furnished by"—specifying certain citizens and merchants, included with which, are those claiming in this case. This law has been held to be constitutional, so far as it provides a lien upon a maritime contract, and unconstitutional so far as it provides for the enforcement of such lien, arising from a maritime contract, by proceedings in rem in the state tribunals. It furnishes the rule, however, to the admiralty court, by which it must be governed in distributing the proceeds of the sale of a domestic vessel, where the maritime law, or some other law enacted by a paramount authority, does not conflict with its provisions. The only remaining question then is, whether the mortgagee has a superior right, granted by an authority competent to nullify the effect of the statute above quoted. Congress, on the 29th July, 1850,—Rev. St. § 4192 [9 Stat. 440],—provided that, "no bill of sale, mortgage, hypothecation or conveyance of any vessel, or part of any vessel of the United States, shall be valid against any person other than the grantor or mortgagor, his heirs," &c., unless such mortgage is recorded in the office of the collector of customs, where such vessel is registered and enrolled, a compliance with the provision of this section, with respect to the recording, and with the act of March 3, 1865,—Rev. St. § 4193 [13 Stat. 518],—with respect to the proper acknowledgment of the mortgage, would make such mortgage valid against all persons, saving only those who claim under the marine law. That this act is constitutional and has the character of a recording act, that recording a mortgage in the office of the collector, at the home port of the vessel, has the effect, by its own force, and irrespective of any formalities required by a state statute to give effect to a chattel mortgage, to give a preference over all claims, with the exceptions above noted, has been determined by the United States supreme court in the case of Smith v. White's Bank, reported in 7 Wall. [74 U. S.] 646.

The evidence in this case shows that the mortgage was properly executed, acknowledged and recorded; it must be allowed to participate in the distribution immediately after the payment of the foregoing claims, and to the exclusion of those of the domestic material-men.